**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | : | |
| GERARD FALZO, et al.,[1] | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO. 03-1922 (JLL) |
| | : | |
| COUNTY OF ESSEX, et al., | : | **OPINION** |
| | : | |
| Defendant. | : | |
| _____ | : | |

**LINARES**, District Judge.

This matter comes before the Court on Plaintiffs Gerard Falzo, et al.'s (the "Plaintiffs")

and Defendants County of Essex (the "County") and Essex County Department of Public Safety,

Division of Corrections' (collectively, the "Defendants" or "Essex") respective motions for

partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The

Court has reviewed the parties' submissions and decides the instant motions without oral

argument. See Fed. R. Civ. P. 78. For the reasons set forth in this opinion, the Court GRANTS

IN PART, DENIES IN PART, and RESERVES IN PART on Plaintiffs' motion for partial

summary judgment and GRANTS IN PART and DENIES IN PART Defendants' motion for

partial summary judgment.[2]

---

[1]  Plaintiffs in this matter are Gerard Falzo, Michael T. DeRosa, Gary Florio, Steven J. Sweigart, John Tully, Jerrry L. Diggs, Eddy Jiminez, James Amorosi, Executor of the Estate of Nicholas Amorosi, deceased, David Barmore, Michael Wohl, and Andrew E. Fields.

[2]  Jurisdiction is premised on 28 U.S.C. § 1331 as this case is brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

I.      **Background**

Defendants argue that Plaintiff's Motion for Partial Summary Judgment should be denied

based on Plaintiffs' failure to submit a statement of material facts containing numbered

paragraphs in compliance with L. Civ. R. 56.1. (Defs. Opp'n Br. at 39-40.) The Rule states, in

pertinent part: "On motions for summary judgment, each side shall furnish a statement which sets

forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1.

While Plaintiffs have not submitted a "Statement of Material Facts" separate and apart from the

statement set forth in their moving brief, said brief contains a twelve-page "Statement of Facts"

which cites to exhibits in the record. This statement meets the requirements set out by the Local

Rule. Thus, Defendants' argument is unfounded and the Court refrains from dismissing

Plaintiffs' motion on these grounds.

A.      **Factual History**

The following facts are not in dispute unless otherwise noted. Plaintiffs, eleven current

and former County of Essex Corrections and Superior Officers, formed the K-9 Unit for the

Defendants. (Pl. Statement of Facts ("SOF"), ¶ 1;[3] Def. SOF, ¶ 1.) The Unit was in existence

from approximately 1998 until November of 2004. (Pl. SOF, ¶ 10.) Plaintiffs performed their

duties at the Essex County Jail in Newark and the Essex County Jail Annex in West Caldwell,

working either thirty-two (32) hour weekend shifts or forty (40) hour shifts during the week. (Id.

at ¶¶ 4-5; Def. SOF, ¶ 40.) The weekday shift consisted of one eight-hour shift per day Monday

---

[3] Plaintiffs' original Statement of Facts did not contain numbered paragraphs. For ease
of their own response, Defendants reproduced Plaintiffs' original statement in numbered
paragraph form. The Court will refer to Plaintiffs' Statement of Facts by the numbered
paragraphs in Defendants' reproduction.

through Friday; the weekend shift, one sixteen-hour shift worked on both Saturday and Sunday. (Id.)  The officers were assigned to one shift – there were three separate 8-hour shifts on a weekday to which the officers could be assigned – and continued on that shift until or unless notified otherwise.  (Id. at ¶ 42.)[4]  These shifts were in place from 1980 until April 2004.  (Id. at ¶ 41.)

Once an officer was selected to be part of the K-9 unit, Essex assigned them a police dog and provided them training on the basic duties of K-9 patrol.  The training was conducted by any of the Union, Passaic, or Essex County Sheriff Departments.  (Pl. SOF, ¶¶ 17-18.)  Plaintiffs were not instructed at this training – or at any other time – as to the amount of time required to care for their assigned dogs.  (Id. at ¶ 26.)  Plaintiffs were expected to engage in yearly re-certification training as well as to perform twenty hours a month of additional training.  (Id. at ¶ 58.)

The Essex County Jail Annex Order 98-5 ("Annex 98-5" or the "Annex") – and the accompanying Essex County Department of Public Safety's K-9 Manual – came into effect on April 27, 1998 in order to "establish guidelines and standard operating procedures for the Essex County Department of Public Safety's K-9 unit."[5]  (Certification of Gary Spagnola ("Spagnola Cert."), Ex. D at 3; see Pl. SOF, ¶ 11.)  As Essex lacked any kennel facilities in which the

_____

[4]  Plaintiffs Barmore, Falzo, Florio worked the weekend shift and Plaintiffs Fields, Jiminez, Sweigart, Whol, DeRosa, Amorosi, and Tully, the weekday shift.  (Def. SOF, ¶¶ 43-51, 53.)  Plaintiff Diggs worked the weekday shift from April 2000 through September 14, 2000 and June 27, 2002 through June 19, 2003 and the weekend shift from September 15, 2000 through June 26, 2002.  (Id. at ¶ 143.)

[5]  Plaintiffs contend that Annex 98-5 "governed" their duties as K-9 officers while Defendants claim that the directive was merely a "guide."  The Court finds the language of the Annex's "Purpose" section persuasive as to the Annex's function.

officers could permanently house their dogs (Pl. SOF, ¶ 21; <u>see</u> <u>id.</u> at ¶ 31), the Annex specified that "police canines . . . must reside with their officer handler [and] . . . shall not be housed in a kennel" (<u>id.</u> at ¶¶ 11, 22).  During the day, however, the canines were secured in holding kennels at the officers' respective places of employment.  (<u>See</u> <u>id.</u> at ¶ 30.)  Annex 98-5 also set out the responsibilities incumbent upon a K-9 officer with respect to the care of the police dogs.  Such duties included, "medical requirements, grooming, diet, training and exercise, socialization, safety" as well as those tasks necessary to properly care for the police dogs while in the kennel facilities, including "cleaning [the] run at least twice daily, feeding, providing fresh water, exercising, grooming, etc."  (<u>Id.</u> at ¶ 12; Spagnola Cert., Ex. E at 46, 48.)  Plaintiffs allege that the time spent on these tasks each day ranged from 3 hours 54 minutes to 4 hours 39 minutes (Def. SOF, ¶ 6), while Plaintiffs expert testified that a reasonable amount of time necessary to perform the care-taking activities is 3 hours 3 minutes daily (<u>id.</u> at ¶ 10).

Essex compensated Plaintiffs pursuant to their respective collective bargaining agreements ("CBAs").  (<u>See</u> Pl. SOF, ¶¶ 36, 48; Def. Resp. to Pl. SOF, ¶ 6.)  Essex's Payroll Manager, William Friel, testified at his deposition that Essex calculates overtime rates of pay by dividing the employees' annual salary by 2080,[6] and then multiplying the resultant number by 1.5.  (<u>Id.</u> at ¶ 41.)  Plaintiffs' overtime rate of pay is calculated identically.  (<u>Id.</u> at ¶ 42.) However, the former Director of Labor Relations and current assistant county counsel for Essex, Dolores Capetola, Esq., testified at her deposition that CBA negotiations for Plaintiffs did not include discussions about compensating the K-9 officers for any overtime canine care.  (<u>Id.</u> at ¶¶

---

[6] Friel testified that the number 2080 is equal to the number of hours worked annually based on a 40-hour workweek.  (Pl. SOF, ¶ 43.)

48-50.)   The unions representing the Sheriff's Officers (not parties to this action) negotiated side agreements for the compensation of their K-9 officers, outside the Sheriff's Officers' respective CBAs.  (Pl. SOF, ¶ 52.)

Plaintiffs Barmore, Diggs, DeRosa, Falzo, Fields, Florio, Sweigart, and Tully learned at various times between 1997 and 2000 that the K-9 activities they performed were compensable. (Def. SOF, ¶¶ 18, 21, 23, 26, 30, 32, 35, 37.)  However, the parties dispute whether Plaintiffs filed grievances or written complaints of any sort regarding their claims for overtime compensation prior to instituting this action.  (Compare Def. SOF, ¶¶ 19, 22, 24, 27, 31, 33-34, 36, 38-39 with Pl. Resp. to Def. SOF, ¶¶ 19-20, 22, 24-25, 26-27, 31, 33-34, 36, 38-39.)

### B.   Procedural History

Plaintiffs commenced this case on April 30, 2003 and amended their two-count complaint on October 14, 2003 (the "Amended Complaint"), seeking compensatory damages for unpaid overtime and other relief – including liquidated damages, attorney's fees, and a declaratory judgment – under the Fair Labor Standards Act of 1983 ("FLSA" or the "Act") (Count I) and the New Jersey Employer-Employee Relations Act (Count II).  The parties proceeded with discovery and on November 10, 2006, the parties filed cross-motions for partial summary judgment.  These motions were terminated on April 27, 2007 while this action was pending before Judge Bassler. On May 4th of that year, the parties agreed to mediation; Magistrate Judge Madeline Cox Arleo stayed the action pending mediation.  Unable to reach a settlement, the parties re-filed their motions for summary judgment.  The action was reassigned numerous times to various judges in this District before finally being assigned to this Court on October 12, 2007.

On November 26, 2007, based on a scheduled settlement conference, the parties notified

the Court of their intent to withdraw all pending motions for partial summary judgment in order

to attempt to settle the matter amicably.  As a result, the Court entered an order terminating said

motions.  At the December 18, 2007 settlement conference, the parties were unable to reach a

settlement agreement.  The Court entered an order on March 25, 2008, directing the parties to re-

file the summary judgment motions within thirty days of the entry of the order.  In accordance

with the order, the parties filed the present motions on April 23, 2008.

## II.    **Legal Standard**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial.  Id.

at 324.   In so presenting, the non-moving party must offer specific facts that establish a genuine

issue of material fact, not just "some metaphysical doubt as to the material facts."  Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   Thus, the non-

moving party may not rest upon the mere allegations or denials in its pleadings.  See Celotex,

477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions, bare

allegations, or speculation to defeat summary judgment.  See Ridgewood Bd. of Educ. v. N.E. ex

rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all facts and

their reasonable inferences in the light most favorable to the non-moving party.  See

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  With this framework in mind, the Court now turns to the instant motions.

**III.    Discussion**

      **A.    Liability under the FLSA**

Congress passed the FLSA in 1938 in order to "achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the [FLSA]."  Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, et al., 321 U.S. 590, 602 (1944).  In 1985, the Supreme Court held that the FLSA applies to the States.  Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 554 (1985).  The FLSA ensures that

> no employer shall employ any of his employees who in any workweek [are] engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Plaintiffs assert that Essex is bound by the FLSA to compensate them for any overtime spent caring for their police dogs.  (Pl. Br. at 13.)  Defendants do not disagree that the FLSA applies to them.  Although the Third Circuit has not addressed this issue, this Court has.  In Albanese v. Bergen County, 991 F. Supp. 410 (D. N.J. 1998), Judge Wolin stated that it is well-settled that "the FLSA requires employers to compensate dog handlers for the off the clock time they spend caring for and maintaining their dogs."  991 F. Supp. at 420; see Caminiti v. County of Essex, No. 04-4276, 2007 WL 2226005, at *4 (D.N.J. July 31, 2007) (recognizing that "an

officer's at-home care of canines is compensable work under the FLSA").[7]  This Court agrees.

Consequently, any off-the-clock work performed by Plaintiffs in the care and  maintenance of

their police dogs is compensable under the FLSA.  The Court grants summary judgment to

Plaintiffs on this issue.

      **B.**      **Compensable Overtime**

               **1.**      **Rate of Pay for Overtime**[8]

      According to Plaintiffs, any overtime pay to which they are entitled must be compensated

at the rate of one and one-half times their hourly base pay.  (Pl. Br. at 17.)  Defendants concede

this point (see Def. Br. at 34), although they claim that Plaintiffs are only entitled to overtime

compensation if they worked over forty-three (43) hours per week.[9]  Section 207(a) of the FLSA

mandates that employers pay their employees overtime at a rate of one and one-half times the

employees' hourly rate.  29 U.S.C. § 207(a)(1); see Albanese, 991 F. Supp. at 422.  Therefore,

for any overtime that the jury determines the Plaintiffs worked, Plaintiffs must be compensated at

---

    [7]  While the Third Circuit has yet to rule on this issue, a number of other Circuits have concluded that time spent caring for police dogs is compensable under the FLSA.  See, e.g., Leever v. Carson City, 360 F.3d 1014, 1017 (9th Cir. 2004); Brock v. City of Cincinnati, 236 F.3d 793, 803-4 (6th Cir. 2001); Rudolph v. Metro. Airports Comm'n, 103 F.3d 677, 681 (8th Cir. 1996); Reich v. New York City Transit Auth., 45 F.3d 646, 650-51 (2d Cir. 1995); Bull v. U.S., 68 Fed. Cl. 212, 239 (Fed. Cl. 2005); Udvari v. United States, 28 Fed. Cl. 137 (Fed. Cl. 1993); Truslow v. Spotsylvania County Sheriff, 783 F.Supp. 274, 279 (E.D. Va. 1992), aff'd, 993 F.2d 1539 (4th Cir. 1993) (text in Westlaw).

    [8]  Plaintiffs also argue that Essex is obligated to pay them overtime compensation for the off-duty work performed at a rate of one and one-half times their hourly rate of pay.  (Pl. Br. at 19-21.)  This argument is analogous to the issue addressed in Part III.B.1 and B.2 and thus need not be addressed separately.

    [9]  Defendants' contention is addressed in Part III.C.2, infra.

a rate of one and one-half times their hourly rate of pay.

      **2.**      **Establishing Amount of Time Worked**

In order to receive compensation for actual overtime worked, Plaintiffs bear the burden of establishing that they performed work for which they were not compensated.  See Albanese, 991 F. Supp. at 423 (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946)). Plaintiffs, relying on Albanese, argue that in situations where, as here, the employer has not made any records of the compensable overtime, Plaintiffs burden is only to establish that the overtime they worked was reasonable.  (Pl. Br. at 22.)  The Court disagrees.

In establishing the "reasonableness" standard to which the Plaintiffs cite, the Albanese Court relied on the cases of Hellmers v. Town of Vestal, 969 F. Supp. 837, 844-45 (N.D.N.Y. 1997), and Holzapfel v. Town of Newburgh, 950 F. Supp. 1267, 1273 (S.D.N.Y. 1997), both of which were good law at the time.  Subsequently, however, the Second Circuit rejected the "reasonableness" standard, opting for a standard that more closely paralleled the definition of "work" derived from the Supreme Court's opinion in Tennessee Coal, Iron & R. Co.  See Holzapfel v. Town of Newburgh, 145 F.3d 516 (2d Cir. 1998).  In reversing the lower court opinion, the Second Circuit directed the district court to engage the jury in a two-part analysis: first, to consider whether the actual amount of time spent on the task was required by the employer and second, if the contested time was not so required, to determine whether "the employee expended this time primarily for the benefit of the employer."  Id. at 523.

This Court adopts the aforestated approach of the Second Circuit in Holzapfel and

refrains from applying the "reasonableness" standard previously adopted in <u>Albanese</u>.[10]  Thus, in order to recoup unpaid overtime compensation, Plaintiffs must establish for the jury at trial that the time they spent caring for the canines was required by their employer and, if the duties were not so required, whether the dog care and maintenance was performed primarily for the employer's benefit.  To the extent that Plaintiffs request that this Court enter an order establishing a different standard, that portion of Plaintiffs' motion is denied.

### 3.    **Compensation for Time Not Worked**

Essex argues that Plaintiffs cannot receive compensation for any workweek in which they were not members of the K-9 unit, did not possess a dog, or were no longer employed by Essex. (Def. Br. at 23.)  Plaintiffs concede that they "do not seek compensation for th[ese] time periods . . . ." (Pl. Opp'n Br. at 5.)  In <u>Tennessee Coal</u>, the Supreme Court defined "work" as "physical and mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer."  <u>See</u> <u>Tennessee Coal, Iron & R. Co.</u>, 321 U.S. at 598.  If Plaintiffs were not performing care and maintenance duties for the police dogs, they were not outputting any mental or physical exertion that would constitute the type of "work" at issue in this action.  Therefore, this Court finds that Plaintiffs were not performing the type of "work" at issue during the times when they were not members of the K-9 unit, did not possess a dog, or were not longer employed by Essex.  Thus, Plaintiffs cannot be compensated for said periods of time.  Accordingly, the Court grants summary judgment to

---

[10]  The adoption of the <u>Holzapfel</u> standard promotes a sound public policy of limiting the employer's liability in those cases where "the employee was motivated primarily by his or her own pleasure," or where "the time was expended primarily to inflate the employee's earnings . . . ."  <u>Holzapfel</u>, 145 F.3d at 516, 523.

Defendants on this issue.

**C.      Required Hours Worked**

**1.      De Minimus Doctrine**

In order to recover damages for uncompensated overtime, Plaintiffs bear the burden of proving that the amount of time worked was not <u>de</u> <u>minimus</u>.  <u>See</u> <u>Genarie v. PRD Mgmt., Inc.,</u> No. 04-2082, 2006 WL 436733, at *12 (D.N.J. Feb. 17, 2006); <u>Albanese</u>, 991 F. Supp. at 422 (citing <u>Anderson</u>, 328 U.S. at 692).  Defendants argue that Plaintiffs have not met this burden. (Def. Opp'n Br. at 21.)

In <u>Albanese</u>, the district court adopted a three-part test to determine whether otherwise compensable time is <u>de</u> <u>minimus</u>.  This three-part test (adopted in the Second and Ninth Circuits) looks at the following factors: (1) the administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the work was performed regularly. <u>Albanese</u>, 991 F. Supp. at 422 (citing <u>Reich v. New York City Transit Auth.,</u> 45 F.3d 646, 652 (2d Cir. 1995); <u>Lindlow v. United States</u>, 738 F.2d 1057, 1062-63 (9th Cir. 1984)).  As made explicit by the <u>Albanese</u> Court, the determination on whether time spent caring for the dogs by Plaintiffs was <u>de</u> <u>minimus</u> is "a critical inquiry <u>for the jury</u>."  <u>Id.</u> (emphasis added); <u>see</u> <u>Genarie</u>, 2006 WL 436766, at *13 n.17 (stating that under <u>Albanese</u>, "the determination of whether the three factors outlined were met was a question of fact").

There are material issues of fact as to the <u>de</u> <u>minimus</u> nature of Plaintiffs' work here, <u>e.g.</u>, the size of the claim in the aggregate and the amount of time Plaintiffs spent caring for their dogs.  The estimate of the hours Plaintiffs worked varies as among Plaintiffs' interrogatory

answers and Plaintiffs' expert's and Defendants' expert's respective estimates of the time necessary to care for the dogs.  Thus, the Court cannot resolve this critical issue on the record before it.  The question of whether Plaintiffs' uncompensated overtime was de minimus is a question which must be resolved by the jury at trial and is not within this Court's purview.  See Genarie, 2006 WL 436733, at *13.

### 2.    Length of Plaintiffs' Workweek

The parties disagree over the hourly length of Plaintiffs' workweeks.  Defendants argue that  they have established a seven-day workweek such that the FLSA's 7(k) exemption applies and Plaintiffs, as law enforcement officers, cannot qualify for overtime compensation until they have worked over forty-three (43) hours.  (Def. Br. at 29.)  Plaintiffs counter that Essex specifically utilized a forty hour (40) workweek, allowing Plaintiffs to receive overtime compensation for any hours worked over and above the forty required hours.  (Pl. Opp'n Br. at 15, 21.)

As stated in Part II.B.1, supra, the FLSA requires employers to pay their employees one and half times their regular rate of pay for any hours worked over and above forty (40) hours in one workweek.  29 U.S.C. § 207(a).  However, section 7(k) of the FLSA creates an exception to this rule for law enforcement personnel.  See 29 U.S.C. § 207(k).  The statutory exemption allows those public employers that qualify under section 7(k) to define a "work period" as longer than the standard forty hours.  Id.  Said work period may range from seven (7) to twenty-eight (28) days.  29 U.S.C. § 207(k)(1).  The maximum applicable standard hour range for the former time period is forty-three (43) hours and for the latter, one hundred seventy-one (171) hours.  Id.; 29 C.F.R. § 553.230(c).

12

In order to qualify for the 7(k) exemption, a public employer bears the burden of proving by a preponderance that (1) it has established an alternate work period and (2) the work period is regularly recurring.  Caminiti, 2007 WL 2226005, at *8 (citing McGrath v. City of Phila., 864 F. Supp. 466, 474 (E.D.Pa. 1994)); see 29 C.F.R. § 553.224(a) ("As used in section 7(k), the term 'work period' refers to any established and regularly recurring period of work . . . ").  For purposes of the exemption, a "work period" is not necessarily commensurate with a workweek, duty cycle, or pay cycle, but rather with a period with a specific "beginning and ending time," – in essence, the "cycle of days worked and the amount of days off."  Caminiti, 2007 WL 2226005, at *8; 29 C.F.R. § 533.224(a); see McGrath, 864 F. Supp. at 478 (finding that "the cycle of days actually worked [ ] is controlling" in establishing an alternate work period).  The employer may establish the alternative work period either by making a "public declaration of [an] intent to adopt a work period of between 7 and 28 days" or, without such a declaration, by requiring "its employees [to] actually work a regularly recurring cycle of between 7 and 28 days."  McGrath, 864 F. Supp. at 476 (citing Birdwell v. City of Gadsden, Ala., 970 F.2d 802, 806 (11th Cir. 1992); Lamon v. City of Shawnee, Kan., 972 F.3d 1145, 1154 (10th Cir. 1992)).  However, "courts have strongly urged that the question of whether a 207(k) exemption has been established should be left to the jury."  Caminiti, 2007 WL 2226005, at *10.

Defendants have failed to meet their burden of establishing a regularly recurring alternate work period.  Essex asserts that Plaintiffs worked a regularly recurring seven-day workweek (Def. Br. at 33), and rely on testimony from Plaintiff Ali for  the fact that the officers' work periods (i) were an established seven day cycle and (ii) remained unchanged until approximately April of 2004 (Def. Br. at 33; Hannon Cert., Ex. AA at 65-67).  The Court disagrees.  Ali

13

testified that the directive regarding the shift change altered the schedules from a "four on, two

off to a five on, two off," the suggestion being that Plaintiffs worked a six (6) day – not a seven

(7) day – recurring schedule prior to April 2004.  (See Hannon Cert., Ex. AA at 65:17-65:24.)

As pointed out by the Plaintiffs, Ali also testified that he was paid based on a forty hour

workweek and that the Department of Personnel for the County of Essex paid required overtime

after an officer worked forty (40) hours – not 43.  (Spagnola Cert., Ex. C at 20:7-20:23; 75:16-

75:25).  Furthermore, in their Statement of Facts, Defendants state that Plaintiffs worked a "40

hour week" (Def. SOF, ¶ 40), and Friel, the Essex Payroll Manager, testified at his deposition

that Essex calculated overtime rates of pay for Corrections Officers by taking Plaintiffs' annual

salary and dividing it by 2080 – the number of hours worked in a year based on a forty (40) hour

workweek (Spagnola Cert., Ex. J at 38:15-39:6).  Plaintiffs claim that Defendants thus have

failed to establish – by public declaration or otherwise – a regularly recurring alternative work

period.  These are all material facts in dispute as to whether Defendants' qualify for the 7(k)

exemption.  Therefore, a determination of such facts is a question for the jury.  Accordingly, the

Court denies Defendants' motion for summary judgment on this issue.

### 3.    Compensation for Workweeks of Less Than Forty Hours

Essex seeks dismissal of each of Plaintiffs' claims for workweeks in which they did not

work over forty (40) hours.  (Def. Br. at 9-10.)  Clearly, Plaintiffs are not entitled to overtime

compensation for weeks in which they did not work over forty hours.  See 29 U.S.C. § 207(a).[11]

---

[11]  The Court acknowledges that if Defendants meet their burden of proof and establish their 7(k) exemption eligibility, then Plaintiffs are not entitled to overtime compensation for weeks in which they did not work over forty-three (43) hours.

14

However, the Court cannot make a determination of the weeks that do not meet this threshold on the record before it.  Defendants calculate the workweeks under forty hours by adding (a) the time spent caring for the canines as calculated by Plaintiffs' expert (3.06 hours per day) (b) multiplied by seven days per week to (c) the hours Plaintiffs worked on their regular shift.  (Def. Br. at 11.)

The use of this hypothetical method does not aid the Court in adjudicating the issue: there is considerable dispute over the amount of <u>actual</u> time Plaintiffs spent caring for the dogs. As mentioned, Plaintiffs' expert calculated the <u>average</u> time spent at 3.06 hours per day (<u>see</u> Def. SOF, ¶ 10), while Defendants' expert estimated that the <u>average</u> time spent working with the dogs was 0.93 hours per day (<u>see</u> Spagnola Cert., Ex. N at 68, 69, 72, 72, 86, 89-90, 93). Furthermore, Plaintiffs themselves assert that the <u>actual</u> time they spent caring for the dogs ranged from three (3) to over four and a half (4 ½) hours per day.  (Def. SOF, ¶ 6; <u>see</u> Hannon Cert., Exs. C-M)  These variations are material issues of fact in dispute that preclude the Court from determining those weeks in which individual Plaintiffs did or did not work more than forty (40) hours.  Therefore, Defendants' motion to dismiss these claims is denied.

**D.**     **Statute of Limitations**

Generally, the statute of limitations on claims under the FLSA is two (2) years.  29 U.S.C. § 225(a).  However, if the plaintiff demonstrates that the defendant acted willfully or with reckless disregard to the FLSA's requirements, the applicable statute of limitations is three (3) years from the date the cause of action accrues.  <u>Id.</u>  A cause of action "accrues" for purposes of the FLSA "when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."  29 C.F.R. § 790.21(b).  Here, the

parties both seek a determination on the applicable limitations period – Defendants argue that the two-year limitations period applies while Plaintiffs assert that Defendants' willful conduct mandates a three-year statute of limitations.  (Def. Br. at 25-29; Pl. Br. at 23-27.)  To prevail on their motion, Plaintiffs bear the burden of establishing Defendants' willfulness.  See Bull v. U.S., 68 Fed. Cl. 212, 272 (Fed. Cl. 2005)

A defendant-employer acts willfully "when the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." Caminiti, 2007 WL 2226005, at *5 (quotations omitted); see Albanese, 991 F. Supp. at 425; 5 C.F.R. § 551.104 ("Willful violation means a violation in circumstances where the [employer] knew its conduct was prohibited by the [FLSA] or showed reckless disregard of the requirements of the [FLSA]"). In addition, a willful violation occurs when an employer is " 'evidently indifferent' to the FLSA's requirements." Albanese, 991 F. Supp. at 425 (citing Martin v. Selker Bros., Inc., 949 F.2d 1286, 1296 (3d Cir. 1991)).  An employer shows "[r]eckless disregard [for] the requirements of the Act [when he] fail[s] to make adequate inquiry into whether conduct is in compliance with the [FLSA]."  5 C.F.R. § 551.104.  In this case, Plaintiffs must show that Defendants (1) knew their conduct was prohibited by the FLSA or showed a reckless disregard for its requirements or (2) did not make adequate inquiry into exactly what was required of them by the FLSA.  See Bull, 68 Fed. Cl. at 272-73 (citing 5 C.F.R. § 551.104).

Plaintiffs make three arguments in support of their position that defendants knew their conduct was prohibited by the FLSA or showed a reckless disregard of the FLSA's requirements or did not make adequate inquiry into exactly what was required of them by the same.  First, Plaintiffs assert that "Essex knew twelve years before [Plaintiffs] brought this lawsuit . . . that the

16

FLSA required the payment of compensation to any employee for their work performed with

canines." (Pl. Br. at 25.) For this proposition, they point to the deposition of Dolores Capetola,

former Essex Director of Labor Relations and current assistant county counsel for Essex. (Pl. Br.

in 24-25.) Ms. Capetola testified that she became involved in negotiations for the four units of

the Essex County Corrections Department in 1981 and that she was aware that the canine unit for

the Essex County Sheriff's Department received an additional hour of compensation for their

canine activities over and above their base compensation via side agreements to their CBA.

(Spagnola Cert., Ex. I at 12:3-12:12; 100:2-102:8.) The Sheriff's Department's overtime

compensation scheme commenced in 1991 with a side agreement between the Essex County

Sheriff and the Essex County Sheriff's PBA Local 183. (Spagnola Cert., Ex. L(1)-L(4).)

Second, Plaintiffs argue that Ms. Capetola, a licensed, practicing attorney for Essex, was put on

notice of the required overtime compensation with the Albanese decision. (Pl. Br. at 25.) Third,

Plaintiffs state that Annex 98-5 specifies duties for which Essex knew or should have known

overtime compensation was required. (Id. at 26.)

  Defendants counter that none of the Plaintiffs complained, notified – orally or in writing,

or filed a grievance regarding the amount of time spent caring for and maintaining the police

canines for which they are currently seeking compensation. Without evidence of such requests,

according to Defendants, "there is no evidence that Plaintiffs' superiors knew that they were

performing compensable work." (Def. Br. at 27-28; Def. Opp'n at 30.) Essex further maintains

that Plaintiffs could not work overtime hours without obtaining approval from their supervisor.

(Def. Br. at 28.) Finally, Defendants claim that Plaintiffs' affidavits stating that they requested

overtime compensation for said work is inadmissible evidence, not to be considered by the Court.

(Def. Opp'n Br. at 31.)  Regardless of these contentions, the Court finds that Essex acted in "reckless disregard" of and with "evident indifference" to the requirements of the FLSA.

"The FLSA imposes significant burdens on an employer to ensure that its treatment of, behavior towards, and policies regarding its employees complies with the FLSA."  Albanese, 991 F. Supp. at 425.  There is no evidence in the case at bar that Defendants undertook the substantial responsibilities outlined in Albanese.  Defendants had knowledge that the care and maintenance activities laid out in Annex 98-5 required overtime compensation:  Defendants were compensating the K-9 Unit of the Essex County Sheriff's Department for precisely the type of work Plaintiffs performed with their own police dogs.  (See Spagnola Cert., Ex. I at 100:2-102:8.)  There is no indication, however, that Essex took any steps to ascertain whether the "guidelines and operating procedures" set forth in Annex 98-5 for the work required of Plaintiffs in caring for the dogs were in accordance with the terms of the Act.  Furthermore, Defendants have not shown that they attempted to meet the requirements of the FLSA: they did not enter into a side agreement for overtime compensation with Plaintiffs as they did with the Sheriff's Department nor did they provide Plaintiffs with a stipend, as the defendants did in Albanese.

As Plaintiffs assert, the Albanese decision squarely addresses the issue at bar and the Court finds that Essex was made aware of what was required of them through the Albanese decision.  There is nothing in the record before this Court that demonstrates Defendants did anything to ensure that their actions were in compliance with the requirements of the FLSA.  Such a lack of diligence on Defendants' part constitutes both "reckless disregard" and "evident indifference" to what is called for by the FLSA.  Consequently, the three-year statute of limitations is applicable.

E.     __Equitable Estoppel__

According to Plaintiffs, Essex is bound to pay Plaintiffs overtime compensation for no

less than 1.75 hours per day under the principles of equitable estoppel.  (Pl. Br. at 30.)  Plaintiffs

argue that because Essex compensates the Sheriff's Department K-9 officers at a rate of 1.75

hours daily, Essex has established the standard for what it considers "fair and reasonable

compensation for the work necessary to fulfill a canine handler's responsibilities . . . " and

Plaintiffs should be compensated at this rate or higher.  (Id. at 32.)  The Court disagrees.

The New Jersey Supreme Court has set the bounds of the doctrine of equitable estoppel:

"The essential principle of the policy of [equitable] estoppel . . . is that one may, by voluntary

conduct, be precluded from taking a course of action that would work injustice and wrong to one

who with good reason and in good faith has relied upon such conduct."  Middletown Twp.

Policemen's Benevolent Ass'n Local No. 124 v. Twp. of Middleton, 162 N.J. 361, 367 (2000).

However, equitable estoppel is "rarely invoked against a governmental entity."  Id. (citation and

quotation omitted).  Plaintiffs claim that allowing Essex to compensate them in an amount less

than that which Defendants voluntarily negotiated with the Sheriff's Department would promote

injustice.  (Pl. Br. at 33.)  While the voluntary nature of Essex's negotiation is not at issue here,

Plaintiffs' detrimental reliance on Defendants' prior conduct – an element necessary to invoke

equitable estoppel – is.  See Middletown Twp., 162 N.J. at 367, 374.

In Middletown Township, plaintiff – a police officer – retired from his post after

receiving assurances from defendant, the Township, that he and his family would be provided

free health insurance coverage upon his retirement.  Id. at 365-66.  After he retired, plaintiff

began receiving the health benefits and continued to do so for ten years until the Township

19

revoked them.  Id. at 366.  The New Jersey Supreme Court found that the Township was

equitably estopped from rescinding the benefits as plaintiff had reasonably relied on the

representations that he would receive the benefits for the duration of his retirement.  Id. at 372

("A municipality will be equitably estopped from terminating benefits that were previously

approved and relied upon by the recipient" (emphasis added)).  In reversing the Appellate Court's

denial of the plaintiff's benefits, the Supreme Court noted that the case on which the lower courts

had relied was distinguishable as "that case lack[ed] the critical element of reliance."  Id. at 374.

       In the case at bar, Plaintiffs were never involved in the Sheriff's Department's

negotiations for the extra compensation.  There is also no evidence that supports any inference

that Plaintiffs relied on the Sheriff's Officers' side agreement nor that anyone made any

representations to Plaintiffs regarding payment of overtime compensation at the same rate as the

Sheriff's Department's K-9 officers.  Moreover, Plaintiffs never received any overtime

compensation that they relied on and was subsequently revoked.  Without any reliance, Plaintiffs

have not  met their burden that equitable estoppel applies here.  Thus, the Court denies Plaintiffs'

motion for partial summary judgment to equitably estop Essex from paying Plaintiffs an amount

less than 1.75 hours per day for overtime worked.

       **F.    Exhaustion of Administrative Remedies**

       Defendants contend that Count II of the Amended Complaint cannot proceed because

Plaintiffs have failed to exhaust their administrative remedies.  (Def. Br. at 34.)  In support of

their argument, Defendants state that to bring a claim against Essex under the CBA, Plaintiffs

must have complied with the procedures established in their CBA.  (Id.)  Plaintiffs argue that

inasmuch as they are bringing a claim under the FLSA, they are not required to exhaust their

administrative remedies prior to the commencement of this cause of action.  (Pl. Opp'n Br. at

23.)

Plaintiffs point the Court to Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728

(1981), in support of their position.  In Barrentine, the Supreme Court asserted that rights under

the FLSA "cannot be abridged by contract or otherwise waived . . ." through a CBA.  Id. at 740.

Furthermore, this Court has already established the standard for determining whether a plaintiff

must exhaust his administrative remedies prior to bringing a cause of action under the FLSA:

> The rule to determine whether a plaintiff is required to exhaust remedies set forth in a
> CBA before bringing the claim is well-established.  If the claim is based on rights arising
> from the CBA, the plaintiff is required to exhaust remedies created by the agreement.  If
> the claim arises from statutory rights, the plaintiff is not required to exhaust agreement
> remedies, because statutory rights under the FLSA are guarantees to individual workers
> that may not be waived through collective bargaining.

Cacciatore v. County of Bergen, No. 02-1404, 2005 WL 3588489, at *8-9 (D.N.J. Dec. 30, 2005)

(quotations and citations omitted) (Bassler, J.).

Count II of the Amended Complaint is in fact a breach of contract claim.  Plaintiffs allege

in Count II that they entered into CBAs which required Essex to compensate them for overtime

work performed and that Essex's failure to do so is a breach of the agreements.  (Am. Compl., ¶¶

34, 36-37.)  These claims clearly arise out of Plaintiffs' CBAs, requiring Plaintiffs "to exhaust

remedies created by the agreement[s]."  Accordingly, Defendants' motion to dismiss Count II of

the Amended Complaint is granted without prejudice.

### G.        Inclusion of Nicholas Amorosi in this Action

Essex seeks a dismissal of plaintiff Nicholas Amorosi's claims and asserts that there is no

admissible evidence showing that he performed any of the work at issue in this action.  (Def. Br. at 36.)

In cases where, as here, the employer has failed to keep records of the amount of overtime worked by the employees, the burden is on the employee to prove "that he has in fact performed work for which he was improperly compensated."  Anderson, 328 U.S. at 687.  The plaintiff must adduce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Id.  Here, Plaintiffs point the Court to interrogatory answers that they would present at trial which they claim create a dispute of material fact precluding an entry of summary judgment.

Defendants state that the interrogatory answers produced by Plaintiffs are insufficient to demonstrate that Amorosi performed any activities for which overtime compensation is due. (Def. Br. at 37.)  Amorosi is deceased and thus, the Executor of his estate, his brother James Amorosi, attested to plaintiff Amorosi's interrogatories which included a tally of the time Amorosi and his son, Nicholas Amorosi Jr., spent daily in caring for his assigned dog.  (See Hannon Cert., Ex. C.)  While James Amorosi's certification of the interrogatory answers states that he lacked personal knowledge of the time Amorosi and his son spent caring for the dog, Plaintiffs assert that evidence admissible at trial is available to satisfy their burden of proof.  (Pl. Opp'n Br. at 26-28.)  Plaintiffs can – and have indicated their intention to – call Nicholas Amorosi, Jr. at trial to testify as to the amount and extent of work that he and his father performed in caring for the assigned canine.[12]  (Id. at 26.)  Furthermore, Amorosi Jr. submitted an

_____

[12]  Plaintiffs indicate that they revealed Amorosi Jr.'s identity to Defendants in the Amorosi Estate's answers to interrogatories in April 2004.  (Pl. Opp'n Br. at 26.)  However,

affidavit attesting to the fact that he resided with his father and witnessed his father's care and maintenance activities.  (Spagnola Cert. in Opp'n to Def. Mot., Ex. D, ¶¶ 5, 9.)  This testimony by Nicholas Amorosi, Jr. would be admissible at trial and, if believed by the trier of fact, would establish that plaintiff Amorosi performed the work at issue – and the extent and amount of the work performed.  Therefore, summary judgment as to this issue is denied.  The Court will not dismiss the claims of Plaintiff Nicholas Amorosi at this time.

### H.   Damages

#### 1.   Liquidated Damages

Plaintiffs move for summary judgment on the availability of liquidated damages.  Under the FLSA, an "employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee . . . affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  However, an employer can rebut the presumption in favor of liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA] . . . ."  See 29 U.S.C. § 260.  Upon such a showing, the court may exercise its discretion and "award no liquidated damages or award any amount thereof not to exceed the amount specified in [29 U.S.C. § 216]."  Id.

"In determining an employer's subjective good faith, a court must find that the employer had an honest intention to ascertain and follow dictates of the FLSA."  Brooks v. Village of

Defendants never conducted a deposition with Amorosi Jr.  (See id. at 27, 28.)

Ridgefield Park, 185 F.3d 130, 137 (3d Cir. 1999); see Caminiti, 2007 WL 2226005, at *7;

Albanese, 991 F. Supp. at 425 ("[A] defendant employer must show that he took affirmative

steps to ascertain the [FLSA's] requirements, but nonetheless, violated its provisions").  To meet

its "plain and substantial burden of proof that it should not have to pay liquidated damages,"

Albanese, 991 F. Supp. at 425, the employer must establish – in addition to the subjective good

faith requirement – that he objectively acted as a "reasonably prudent [employer] would have

acted under the same circumstances," Brooks, 185 F.3d at 137.

　　　　In opposition to Plaintiff's motion, Defendants state that they must first be found to have

violated the FLSA before Plaintiffs can receive liquidated damages.  (Def. Opp'n Br. at 38.)

While it is true that Plaintiffs may not recoup liquidated damages prior to a determination on

Defendants' culpability, the Court could nevertheless make a determination about the availability

of liquidated damages if Plaintiffs were to prevail at trial.  See Albanese, 991 F. Supp. at 426.

However, the Court at this time reserves decision on this issue so that it may better put in context

the actions or inactions of the employer after having the benefit of a full record once the trial is

completed.

### 2.　　Attorneys' Fees

　　　　Plaintiffs also seek an award of attorneys' fees and costs.  (Pl. Br. at 34.)  Defendants

counter with the same argument they made as to liquidated damages: that fees and costs cannot

be awarded until Plaintiffs receive a favorable decision on Defendants' liability.  (Def. Opp'n Br.

at 39.)  With respect to attorneys' fees, the FLSA provides: "The court . . . shall, in addition to

any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by

the defendant, and costs of the action."  29 U.S.C. § 216(b) (emphasis added).  The language of

the statute makes clear that once a plaintiff has prevailed as to damages, attorney's fees and costs are mandatory remedies.  For the same reasons as set forth in the Court's determination regarding liquidated damages, the Court reserves on this issue.

**IV.**   <u>**Conclusion**</u>

For the aforementioned reasons, the Court grants in part, denies in part, and reserves in part on Plaintiffs motion for partial summary judgment; Defendants' motion for partial summary judgment is granted in part and denied in part; and Count II of the Amended Complaint is dismissed without prejudice.  An appropriate Order accompanies this Opinion.

Date:   May 13, 2008                                        /s/ Jose L. Linares
                                                            United States District Judge